IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRINA L. BAYNES,

   Plaintiff,

     v.

PHILIPS MEDICAL SYSTEMS, (CLEVELAND), INC.,

   Defendant.

CIVIL ACTION FILE
NO. 1:08-CV-2027-TWT

ORDER

This is an action for intentional infliction of emotional distress. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 28]. For the reasons stated below, the Defendant's Motion for Summary Judgment [Doc. 28] is GRANTED.

I. Background

Philips Medical Systems, Inc., manufactures medical devices and systems. It operates a customer support call center in Atlanta, Georgia. Philips hired Trina Baynes as an at-will employee on October 24, 2005. She worked as a product support representative at the call center. While employed, she suffered from asthma, Graves disease, and high blood pressure. (Compl. ¶ 2.)

In April 2006, Baynes took medical leave to have a cardiac catherization. (Id. ¶ 3.) The procedure was recommended by her physician "due to indications of extreme stress, which was in large part related to her job." (Id.) According to Baynes, when she returned from medical leave, she was asked to work seventeen days with one day off. (Id. ¶ 4.) This schedule included a mandatory training seminar in Cleveland, Ohio. (Id.) Baynes complains that the trip occurred too soon after her cardiac catherization procedure and required too many consecutive days of work. She also complains that her supervisor called to discuss her schedule during a doctor's appointment and spoke for nearly an hour about unrelated matters.

On May 17, 2006, Baynes met with her supervisor and a human resources representative. (Id. ¶ 5.) In the meeting, Baynes received a Performance Improvement Plan to address ongoing disciplinary concerns. According to Philips, Baynes was tardy on multiple occasions and was overheard making unprofessional comments about her supervisor. (Def.'s Mem. in Supp. of Mot. for Summ. J. at 3.) Baynes denies making any such comments and complains that the meeting was too long and confrontational and caused her to become "fatigued, breathless, and [anxious]." (Compl. ¶ 5.) Specifically, she asserts that her supervisor "badgered" her to sign a written statement of admission regarding her alleged comments. (Id.) Instead, she left the office and sought medical treatment. (Id.)

After that meeting, Baynes took three months medical leave. She complains that Philips employees called her too frequently during this period and that the tone of the conversations was "harassing." (Id. ¶ 6.) Additionally, she alleges that her team leader and other members of her customer service team became aware that she had an independent medical examination. (Id. ¶ 7.) She complains that the alleged disclosure of such information and the "harassing" phone calls caused her further emotional distress and made recovery difficult.

When she returned from medical leave, Baynes met with her supervisor and a human resources representative. Her supervisor reminded her that the Performance Improvement Plan issued on May 17 remained in effect. (Id. ¶ 8.) According to Baynes, her supervisor again demanded that she sign a statement of admission regarding the disputed comments. (Id.) In response, Baynes became anxious and left the office. She complains that the meeting was long, confrontational, and caused her to "bec[o]me breathless, beg[i]n trembling, and suffer[] another anxiety attack." (Id.) After the incident, Baynes did not return to the office. As a result, Philips terminated her for job abandonment on August 18, 2006. (Id.) Baynes sued Philips on May 15, 2008, for intentional infliction of emotional distress. Philips now moves for summary judgment.

## II. Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

To state a claim for intentional infliction of emotional distress in Georgia, the plaintiff must show (1) reckless or intentional conduct (2) that was extreme or outrageous and (3) caused emotional distress (4) that was severe. Jarrard v. United Parcel Serv., Inc., 242 Ga. App. 58, 59 (2000). Baynes asserts that seven actions taken by Philips support her claim for intentional infliction of emotional distress: (1) the April 2006 Cleveland trip and her associated work schedule; (2) the phone call from her supervisor; (3) the May 17 meeting with human resources; (4) the phone

calls from Philips employees during her medical leave; (5) the alleged disclosure of her medical information; (6) the August 16 meeting with human resources; and (7) her termination for job abandonment. The first two actions occurred before May 15, 2006, and are barred by the two-year statute of limitations. The remaining five do not collectively constitute extreme or outrageous conduct as defined by Georgia courts.

    A.    <u>Conduct Before May 15, 2006</u>

The statute of limitations in Georgia for an intentional infliction of emotional distress claim is two years. O.C.G.A. § 9-3-33; <u>Mears v. Gulfstream Aerospace Corp.</u>, 225 Ga. App. 636, 639 (1997). Baynes filed this action on May 15, 2008. Philips asserts that this bars consideration of any conduct occurring before May 15, 2006. Baynes argues that Georgia's continuing tort doctrine allows the court to consider all conduct contributing to her ongoing injury.

The continuing tort doctrine, "which applies where any negligent or tortious act is of continuing nature and produces injury in varying degrees over a period of time" provides that "the statute of limitations does not begin to run until such time as the continued tortious act producing injury is eliminated." <u>Id.</u> at 640 (internal citations omitted). However, the doctrine is qualified by the discovery rule, which provides that a cause of action accrues when a plaintiff discovers, or with reasonable diligence should have discovered, her injury and the cause thereof.

For example, in Mears v. Gulfstream Aerospace Corp., 225 Ga. App. 636 (1997), the plaintiff sued her former employer for intentional infliction of emotional distress after her former supervisor allegedly harassed her and falsely accused her of drug use. The plaintiff took a medical leave for stress and depression in June 1993 and was terminated in November 1993. Id. at 638. She filed her complaint in September 1995. Id. She argued that her November termination brought her claim within the two-year statute of limitations because it was "the ultimate act of inflicting emotional distress." Id. at 639. The Georgia Court of Appeals disagreed and held that the injury accrued no later than June 1993 when the plaintiff took medical leave. Id. Accordingly, it affirmed summary judgment in favor of the employer.

Similarly, in Fox v. Ravinia Club, Inc., 202 Ga. App. 260 (1991), the plaintiff sued her former employer for intentional infliction of emotional distress for a series of actions culminating in her termination in August 1987. She filed her complaint in August 1989, but the Georgia Court of Appeals held that her cause of action for intentional infliction of emotional distress accrued no later than April 1987 when she began seeing a psychologist. Id. at 261. Accordingly, the court upheld summary judgment in favor of the employer. Id.

Here, Baynes discovered her injury and the continuing cause thereof no later than April 2006, when she took medical leave for a procedure "recommended by her

physician due to indications of extreme stress, which was in large part related to her job." (Compl. ¶ 3.) She filed her complaint on May 15, 2008, more than two years after her cause of action accrued with the discovery of her injury in April 2006. Accordingly, any injury caused by conduct occurring before May 15, 2006, is barred by the two-year statute of limitations. Specifically, this includes the April 2006 Cleveland trip, the seventeen-day work schedule, and the phone call from Baynes' supervisor during her doctor's appointment.

B. <u>Conduct After May 15, 2006</u>

Baynes alleges that five actions taken by Philips after May 15, 2006, support her claim for intentional infliction of emotional distress: (1) the May 17 meeting with human resources; (2) the phone calls from Philips employees during her medical leave; (3) the alleged disclosure of her medical information; (4) the August 16 meeting with human resources; and (5) her termination for job abandonment. Collectively, these actions do not constitute extreme or outrageous conduct as defined by the Georgia courts.

The Georgia courts define extreme or outrageous conduct as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Yarbrough v. SAS Systems, Inc.</u>, 204 Ga. App. 428, 429 (1992).

Whether the alleged conduct meets this standard is a question of law. Yarbray v. Southern Bell Tel. & Tel. Co., 261 Ga. 703, 706 (1991). In determining whether conduct is extreme or outrageous, Georgia courts consider the totality of the circumstances, including (i) whether the defendant had control over the plaintiff, as in an employer-employee relationship, and (ii) whether the defendant knew of the plaintiff's particular susceptibility to stress. Jarrard v. United Parcel Serv., Inc., 242 Ga. App. 58, 61 (2000). Such factors "may produce a character of outrageousness that otherwise might not exist." Id. However, these factors are not dispositive, and Georgia courts "have repeatedly upheld summary adjudication in favor of the defendant where the conduct [is not inherently outrageous], even though the defendant - who had a controlling relationship over the plaintiff - was aware of the plaintiff's delicate mental condition at the time of the incident." Id.

Here, the actions alleged by Baynes do not constitute extreme or outrageous conduct. Whether conduct is extreme or outrageous is a fact-specific inquiry, but Georgia case law considering similar circumstances offers guidance. First, performance evaluations, even if harsh, retaliatory, or poorly-timed, are typically considered "common vicissitudes of daily life" that do not constitute extreme or outrageous conduct. Id. at 60 ("The law is clear that performance evaluations critical of an employee do not fall into the outrageous category even though (i) given in crude

and obscene language, (ii) done with a smirk, (iii) conducted in a belittling, rude, and condescending manner to embarrass and humiliate the employee, (iv) given at a poor time, (v) tinged with the intent to retaliate for former conflicts, and (vi) constituting a false accusation of dishonesty or lack of integrity.")  For example, in <u>Jarrard v. United Parcel Service</u>, an employee sued his employer for intentional infliction of emotional distress after the employer gave him a harsh performance evaluation on the day the employee returned from extended psychiatric care.  The employee "repeatedly begged in tears that the evaluation be postponed because of his mental weakness," but the employer continued the evaluation "on penalty of termination and with a smirk." <u>Id.</u> at 58.  The Georgia Court of Appeals held that the alleged conduct was not extreme or outrageous as a matter of law and emphasized that "mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living," including comments made within the context of one's employment, are insufficient to establish extreme or outrageous conduct.  <u>Id.</u> at 59.

Second, the termination of an at-will employee, for any or no reason, is not considered extreme or outrageous under Georgia law.  <u>ITT Rayonier, Inc. v. McLaney</u>, 204 Ga. App. 762, 764 (1992) ("[A]t-will employment can be terminated for any or no reason . . . [and therefore] gives rise to no claim for the intentional infliction of emotional distress.").  Finally, inquiries about an employee's condition

or work schedule are typically insufficient to support a claim for intentional infliction of emotional distress. For example, in Bowers v. Estep, 204 Ga. App. 615 (1992), a depressed and severely claustrophobic employee sued his employer for intentional infliction of emotional distress alleging that his employer "threatened, humiliated, and intimidated him in the course of . . . inquiries concerning his emotional condition and . . . maliciously transferred him to another position." Id. at 618. The Georgia Court of Appeals held that the alleged conduct was not extreme or outrageous and upheld summary judgment for the employer. Id. The court explained:

> [An employee's supervisors are] authorized . . . to inquire into his condition and to make any necessary adjustments in his work schedule or environment to accommodate his condition. Such actions, even if done in a manner that embarrasse[s] or humiliate[s] [the employee], cannot be characterized as the type of shocking and outrageous behavior necessary for a recovery of damages.

Id.

Here, Baynes complains that Philips employees called her almost daily. Additionally, she alleges that on one occasion her team leader was told the date of her independent medical examination. However, the purpose of the telephone calls was to stay apprised of Baynes' condition and anticipated date of return in order to maintain the employment relationship. Accordingly, the alleged inquiries are similar in purpose to those complained of in Bowers, which the court held were insufficient to support a claim for intentional infliction of emotional distress. See id. Moreover,

it is relevant that Baynes was employed only six months before taking medical leave and was not eligible for job protection under the Family Medical Leave Act. See 29 U.S.C. § 2601 et seq.; see also Def.'s Mem. in Supp. of Mot. for Summ. J. at 22. Despite this fact, Philips held Baynes' position open. This "contraindicates" Philips' intent to inflict emotional distress during Baynes' medical leave and supports the finding that the calls were not extreme or outrageous. See Crowe v. J.C. Penney, Inc., 177 Ga. App. 587, 588 (1986) (finding no extreme or outrageous conduct where an employer allowed her employee a two month leave of absence after the distressing incident because the employer's action contraindicated an intent to inflict emotional distress).

Baynes cites Anderson v. Chatham, 190 Ga. App. 559 (1989), and Lightning v. Roadway Exp., Inc., 60 F.3d 1551 (11th Cir. 1995), to support her position that continued mistreatment of an employee may constitute extreme or outrageous behavior. However, both Anderson and Lightning involved lengthy employment relationships of at least two and a half years. Here, Baynes complains of conduct occurring over a four month period. Moreover, Anderson and Lightning involved allegations of more abusive conduct. In Anderson, the plaintiff alleged that the defendant was "very vindictive and very cruel" and threatened her at the time of her termination. Anderson, 190 Ga. App. at 566. In Lightning, the plaintiff alleged that

the defendant had a practice of intentionally demeaning and provoking certain employees. Lightning, 60 F.3d at 1555. He complained that, consistent with this practice, his supervisors threatened him, abused him, and spat on him. Id. at 1554-55. Here, the alleged conduct does not rise to the level of outrageousness as of that complained of in Anderson and Lightning.

IV. Discussion

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 28] is GRANTED.

SO ORDERED, this 25 day of September, 2009.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge